## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| N.T. and L.T., minors, by and through their guardian, Darcy Tellone, individually and on behalf of all other similarly situated, and<br><br>S.P., J.P., K.P., G.P., minors, by and through their guardian, Katie Patterman, individually and on behalf of all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TIKTOK INC. and BYTEDANCE, INC.,<br><br>Defendants. | **Case No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs N.T., L.T., S.P., J.P., K.P., and G.P., minors, by and through their guardians, individually and on behalf of all others similarly situated, bring their complaint against Defendants TikTok Inc. ("TikTok") (successor to Musical.ly, Inc.) and ByteDance, Inc. ("ByteDance") (collectively, "Defendants"), and allege as follows:

### I.  INTRODUCTION

1.  TikTok is a popular smartphone application ("app") that allows its users to create and share short videos. TikTok offers a number of audio and visual features and effects that can be applied to users' videos—including popular song clips, moments from TV shows, stickers, animations, face filters, and face trackers (which automatically zoom in on a user's face when the camera lens detects it).

2.  However, in connection with certain visual features and effects, Defendants

surreptitiously collect, use, and store users' facial geometry, which is private, legally protected biometric information. Defendants fail to disclose or obtain consent for this collection, use, or storage. And they further fail to disclose why they collect, use, and store Defendants' biometric data, who has access to the data, or how long the data will be retained—all of which is required by law.

3.      As recognized in the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq*:

> Biometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. **Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions.**

740 ILCS § 14/5(c) (emphasis added).

4.      Nevertheless, Defendants collect this private, biometric, identifying information even for minor children.

5.      Plaintiffs bring this class action against TikTok and its owner, ByteDance, individually and on behalf of the proposed class, seeking damages and injunctive relief for Defendants' privacy violations.

## II.     JURISDICTION

6.      This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action in which the matter in controversy exceeds the sum of $5,000,000 and Defendants are citizens of a state different from that of at least one class member. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein form part of the same case or controversy.

7.      This Court has personal jurisdiction over Defendants because the allegations in

this complaint arise from Defendants' misconduct occurring within this state and which harmed

residents of this state. Defendants collected, stored, and used the biometric identifiers and

information of class members located in this state, including Plaintiffs. Both Defendants

maintain offices and conduct business in this state.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial

part of the events or omissions giving rise to the claims occurred in this District and Defendants

conduct business in this District.

### III.    PARTIES

#### A.  **Plaintiffs**

9.      Plaintiffs **N.T.** and **L.T.** are minors. Darcy Tellone is the guardian of her minor

children, N.T. and L.T. Ms. Tellone and her children reside in Yorkville, Illinois. N.T. and L.T.

each began using the TikTok app when it was originally known as Musical.ly and they continue

to use TikTok as of the time of the filing of this complaint. N.T. and L.T. used TikTok to record

personal videos, some of which were intended to be kept private and others which were to be

uploaded to the platform. Neither Ms. Tellone nor her children recall seeing or reviewing the

terms of service, privacy policy, or privacy policy for younger users upon creating their TikTok

accounts. Nor does Ms. Tellone or either of her children recall any notifications concerning

updates or changes to the terms of service, privacy policy, or privacy policy for younger users.

10.     Plaintiffs **S.P., J.P., K.P., and G.P.** are minors. Katie Patterman is the guardian

of her minor children, S.P., J.P., K.P., and G.P. Ms. Patterman and her children reside in

Yorkville, Illinois. J.P. began using the TikTok app when it was originally known as Musical.ly;

S.P., K.P., and G.P. signed up in approximately 2020; and all four children continue to use

TikTok as of the time of the filing of this complaint. S.P., J.P., K.P., and G.P. used TikTok to

record personal videos, some of which were intended to be kept private and others which were to

be uploaded to the platform. Neither Ms. Patterman nor her children recall seeing or reviewing the terms of service, privacy policy, or privacy policy for younger users upon creating their TikTok accounts. Nor does Ms. Patterman or her children recall any notifications concerning updates or changes to the terms of service, privacy policy, or privacy policy for younger users.

11.     None of the Plaintiffs or their guardians received notice from Defendants: that Defendants would collect, store, or use their biometric identifiers or biometric information; regarding the time that Defendants would retain such information; or of the purpose of Defendants' collection of such information. Neither the Plaintiffs, nor their guardians, gave consent for Defendants to collect, store, or use Plaintiffs' biometric identifiers or biometric information. Moreover, Plaintiffs, as minors, could not legally consent to Defendants' collection, storage, or use of their biometric identifiers or biometric information.

**B. Defendants**

12.     **Defendant TikTok, Inc**. f/k/a Musical.ly, Inc. ("TikTok") is a California corporation with its principal place of business in Culver City, California. Defendant TikTok maintains offices throughout the United States, including in Chicago, Illinois. In August 2018, Musical.ly, Inc. merged into TikTok, and in May 2019, Musical.ly, Inc. changed its name to TikTok, Inc.[1] TikTok is a wholly owned subsidiary of TikTok, LLC, which in turn is a wholly owned subsidiary of TikTok, Ltd. And TikTok, Ltd. – like Defendant ByteDance, Inc. – is a wholly owned subsidiary of ByteDance, Ltd.

13.     **Defendant ByteDance, Inc.** is a Delaware corporation with its principal place of business in Palo Alto, California. ByteDance, Inc. maintains a corporate office and conducts

---

[1] Unless stated otherwise, Plaintiffs reference the TikTok app collectively with the Musical.ly app in this complaint.

business in Chicago, Illinois. Defendant ByteDance, Inc. is a wholly owned subsidiary of ByteDance, Ltd.

## IV.    FACTUAL ALLEGATIONS

### A.    ByteDance Is One of the Most Influential Tech Companies in the World

14.    ByteDance Ltd. was founded in 2012 by Zhang Yiming based upon the notion that "smartphones would replace newspapers to become the most important medium of information distribution" and artificial intelligence ("AI") would be the driving force behind this evolution.[2] "ByteDance regards its platforms as part of an artificial intelligence company powered by algorithms that 'learn' each user's interests and preferences through repeat interaction."[3]

15.    ByteDance released its first app in 2012, called Neihan Duanzi. Neihan Duanzi was a platform where users shared jokes in the form of short videos, memes, and written posts.

16.    ByteDance's next app was a news aggregator called Jinri Toutiao, which uses Mr. Zhang's AI algorithm to create personal lists of articles and videos tailored to each user based upon their reading habits.[4] The AI at the heart of Toutiao has been such a success that the app is used by over 250 million people in China each month.[5]

17.    In September 2016, ByteDance release a new video-sharing and social-network

---

[2] https://asia.nikkei.com/Spotlight/Cover-Story/Inside-ByteDance-the-75bn-unicorn-behind-TikTok

[3] Letter from Senators Charles Schumer and Tom Cotton to Joseph Maguire, Acting Director of National Intelligence, dated October 23, 2019. *Available at* https://www.democrats.senate.gov/imo/media/doc/10232019%20TikTok%20Letter%20-%20FINAL%20PDF.pdf.

[4] https://asia.nikkei.com/Spotlight/Cover-Story/Inside-ByteDance-the-75bn-unicorn-behind-TikTok

[5] https://www.cnbc.com/2019/05/30/tiktok-owner-bytedance-what-to-know-about-the-chinese-tech-giant.html#:~:text=What%20is%20ByteDance%3F,by%20Chinese%20censors%20in%202018.

app, Douyin, which would become one of the most downloaded smartphone apps of all time.[6] Douyin allows users to create short dance, lip-sync, comedy, and talent videos. By using ByteDance's AI algorithms, Douyin became one of the top downloaded apps in China and has amassed an astounding 400 million daily active users as of January 2020.[7]

18.     Like many popular apps before it, Douyin was not an original idea; rather it imitated an app called Musical.ly. Musical.ly was founded in 2014 by two Chinese nationals from Shanghai, Alex Zhu and Luyu Yang. The video sharing app reportedly had more than 100 million users, primarily in Europe and the Americas.[8] Unlike Douyin, however, Musical.ly was available to U.S. consumers and was building a vast user base around the globe.

**B.  TikTok Has Become One of the Most Popular Apps of All Time**

19.     In May 2017, after the explosion in popularity of Douyin, ByteDance launched TikTok— a nearly identical app—outside of mainland China, including in Japan, Thailand, Vietnam, Indonesia, India, and Germany.

20.     In November 2017, three months after the release of TikTok, ByteDance announced that it entered into a deal to acquire Musical.ly, reported to be worth up to $1 billion.[9] With the acquisition of Musical.ly, TikTok now had a foothold in the U.S. market.

21.     ByteDance formally merged Musical.ly into TikTok in August 2018. Musical.ly was then shut down and its accounts and data were transferred to TikTok.[10]

---

[6] https://www.bytedance.com/en/

[7] https://techcrunch.com/2020/01/06/douyin-tiktok-app-in-china-hits-400-million-daily-active-users/

[8] https://www.reuters.com/article/us-bytedance-musically/chinas-bytedance-scrubs-musical-ly-brand-in-favor-of-tiktok-idUSKBN1KN0BW

[9] https://money.cnn.com/2017/11/10/technology/musically-bytedance-toutiao-china/index.html

[10] https://www.mediapost.com/publications/article/323111/musically-to-shut-down.html#:~:text=The%20mobile%20video%20app%20M,the%20Chinese%20telecom%20firm%20Bytedance

22.     The combination of Musical.ly's lip-syncing platform and ByteDance's advanced technological capabilities has turned TikTok into the most popular app in the United States.

23.     By the end of 2018, TikTok had amassed over 680 million active monthly users—making it one of the most popular apps of all time.[11]

24.     In April 2020, it was announced that TikTok had achieved a key milestone of over two billion downloads:[12]



25.     The popularity of TikTok has led to countless celebrities joining the platform.[13] TikTok counts Will Smith, Britney Spears, Jessica Alba, Alex Rodriguez, and Jennifer Lopez as users, each with millions of followers. The app has also created a new generation of young

[11] https://wallaroomedia.com/blog/social-media/tiktok-statistics/#:~:text=In%20November%20of%202018%2C%20TikTok,800%20million%20as%20of%20now

[12] https://techcrunch.com/2020/04/29/tiktok-tops-2-billion-downloads/#:~:text=In%20the%20quarter%20that%20ended,downloads%2C%20amassed%20nearly%20250%20million

[13] https://www.cosmopolitan.com/uk/entertainment/a32028959/celebrities-on-tik-tok/

celebrities who reached fame through TikTok.[14]

26.     TikTok monetizes its large user base through at least two avenues: in-app purchases of "coins" and traditional online advertising.

27.     TikTok users are able to purchase "coins," a virtual currency used to "reward" the individuals who create videos.[15] TikTok content creators are then able to cash out their coins into real currency.

28.     TikTok, like YouTube and other social media platforms, also advertises on its app.[16] TikTok sells video ads that appear in between user-generated content. Each time these videos appear on a user's feed and a user clicks the ad or takes another action, such as purchasing the advertiser's product, TikTok earns a fee.

29.     Within the fourth quarter of 2019, alone, it was reported that TikTok saw its in-app purchase revenue rise 310% on a year-over-year basis, and overall revenue exceeded $50 million.[17]

30.     The popularity of Jinri Toutiao, Douyin, and TikTok has turned Mr. Zhang's ByteDance into a "unicorn"—valued at $78 billion.[18]

**C.  Defendants Begin to Collect Personal Data as Soon as, if Not Before, a TikTok Account is Created**

31.     To use the app, TikTok users are first prompted to create an account by providing

---

[14] https://www.businessinsider.com/tiktok-most-popular-stars-gen-z-influencers-social-media-app-2019-6

[15] https://www.the-sun.com/lifestyle/tech/475150/how-tiktok-tempts-kids-to-spend-hundreds-of-pounds-on-virtual-coins-to-pay-online-celebs/

[16] https://infobeat.com/how-does-tiktok-make-money-overview-of-the-business-model/#:~:text=Companies%20are%20using%20TikTok%20to,and%20generate%20money%20from%20it.

[17] https://techcrunch.com/2020/01/03/tiktoks-revenue-said-to-skyrocket-over-300-in-q4/

[18] https://www.cnbc.com/2019/09/30/tiktok-owner-bytedances-first-half-revenue-better-than-expected-at-over-7-billion-sources.html

their phone number, an email address, or Facebook account information.[19]

32.    After the account is created, users can search for videos based upon categories (including comedy, animals, and sports), or search more directly for hashtags or specific users.

33.    The app also searches a user's phone contacts or social media followers to identify friends already on TikTok.

34.    After creating an account, users are then able to record, save, and upload their own videos of them lip-synching and dancing to popular songs.

35.    If a user finds a video or content creator which they like, the app allows users to comment on videos or directly message each other.

36.    TikTok's current U.S. Privacy Policy[20] acknowledges some of personal information it collects from its users:

> We collect information when you create an account and use the Platform. We also collect information you share with us from third-party social network providers, and technical and behavioral information about your use of the Platform. We also collect information contained in the messages you send through our Platform and information from your phone book, if you grant us access to your phone book on your mobile device.[21]

37.    More specifically, TikTok stores all the personal information data available to it, such as a person's name, age, email address, phone number, social media accounts, payment information (such as PayPal account information), and contact list (which is submitted by its

---

[19] https://www.commonsensemedia.org/blog/parents-ultimate-guide-to-tiktok

[20] The privacy policies and terms of service addressed in this complaint were discovered by Plaintiffs' counsel's pre-filing investigation and were not reviewed by Plaintiffs or their guardians prior to their involvement in this case, nor did Plaintiffs or their guardians consent to the terms of such policies.

[21] *Available at* https://www.tiktok.com/legal/privacy-policy?lang=en#privacy-us (Updated January 1, 2020).

users when creating a TikTok account).[22]

38.     The app also automatically collects all user content (e.g., videos and photographs recorded on its app) and communications, IP addresses, geo-location-related data, device identifiers, browsing and search history (both on and off the TikTok app), cookies, metadata, and other sensitive personal information.[23]

39.     Senators Christophe Coons and Josh Hawley called location data "among the most sensitive personal information that a user can share with a company." The average smartphone used by Americans today tracks more than the street address at which the user is located—it is able to identify on which *floor* in the building the user can found.[24]

40.     In addition to the personal information that users knowingly and unknowingly provide to TikTok, the company also collects information about the user from third parties, such as Facebook and advertising companies, as well as information provided by other TikTok users.[25]

41.     TikTok does not just collect users' personal information, it "processes,… scan[s] and analyz[es]" the information.[26]

42.     TikTok's Privacy Policy also states that it "may share [a user's personal]

---

[22] https://www.tiktok.com/legal/privacy-policy?lang=en#privacy-us; https://www.reuters.com/article/us-bytedance-tiktok-exclusive/exclusive-chinas-bytedance-moves-to-ringfence-its-tiktok-app-amid-us-probe-sources-idUSKBN1Y10OH

[23] https://www.tiktok.com/legal/privacy-policy?lang=en#privacy-us

[24] Letter from Senators Christophe Coons and Josh Hawley to Mark Zuckerberg, CEO of Facebook, Inc., dated November 19, 2019. *Available at* https://www.coons.senate.gov/imo/media/doc/11.19.19%20FB%20Letter%20FINAL%20(signed).pdf

[25] https://www.tiktok.com/legal/privacy-policy?lang=en#privacy-us

[26] https://www.tiktok.com/legal/privacy-policy?lang=en#privacy-us

information with a parent, subsidiary, or other affiliate of [its] corporate group."[27]

43.    For users under the age of 13, TikTok maintains a separate privacy policy, referred to as its "Privacy Policy for Younger Users."[28]

44.    However, users' reported ages on TikTok are frequently inaccurate, as "age" is determined by the unverified date of birth provided upon sign up, *see infra*.

45.    Even for the most vulnerable, young users whose date of birth was correctly entered at sign-up, TikTok collects personal information, including users' birthdays, and "certain information automatically from the user's device, including internet or other network activity information such as device ID, IP address, web browser type and version, country-level location, as well as certain app activity data, such as video watches, time in the app, and general usage data." And an inaccurate age can subject even TikTok's youngest users to TikTok's broader, even more invasive data collection and disclosure practices.

46.    Further, even for its "Younger Users," TikTok shares "the information [it] collect[s] with [its] corporate group, and with service providers."

47.    Notably, the TikTok app enables users—including minors—to create TikTok accounts and use the app without the users or their guardians ever having seen the privacy policies or terms of service.

---

[27] https://www.tiktok.com/legal/privacy-policy?lang=en#privacy-us. In prior versions of the Privacy Policy, TikTok specifically states that it "will" share user information with "any member or affiliate of our group, in China[.]" *E.g.,*
https://web.archive.org/web/20180829183230/http:/www.tiktok.com/i18n/privacy#how-share (last updated Aug. 2018)

[28] *Available at* https://www.tiktok.com/legal/privacy-policy-for-younger-users?lang=en (updated January 2020).

D. **Defendants Surreptitiously Collect, Store, and Use Plaintiffs' Biometric Information and Biometric Identifiers**

48.     In addition to the large swaths of private and personally identifiable information Defendants collect unnecessarily as described above, Defendants also surreptitiously collect TikTok users' legally protected biometric information and biometric identifiers—and they do so without the required disclosure or consent.

49.     Biometrics is a term used to categorize the most personal and identifying features for each person. It refers to unique, measurable human biological or behavioral characteristics, including fingerprints, voiceprints, and scans of the retina, iris, or face geometry, which are used for identification and authentication purposes.

50.     Defendants' technology allows them to capture their users' biometric data and incorporate it into the TikTok app. ByteDance has publicly admitted that it trained its AI technology to, among other things, engage in "facial recognition for the filters" and that it has "buil[t] intelligent machines that are capable of understanding and analyzing text, images and videos using natural language processing and computer vision technology."[29]

51.     TikTok has even created a feature that allows users to select an individual's face in a video and subsequently use TikTok's facial recognition technology to identify other videos in which that person appears.[30]

52.     Because of the highly sensitive nature of biometric information, in 2008, Illinois adopted the Illinois Biometric Information Privacy Act ("BIPA"), which, among other things, requires companies to provide notice that they are collecting biometric information, obtain written consent, and make certain disclosures. In addition, companies subject to BIPA are

---

[29] https://www.theverge.com/2018/11/30/18107732/bytedance-valuation-tiktok-china-startup

[30] https://radiichina.com/tiktok-new-video-search-function-is-from-the-future/

required to develop a written policy establishing a retention schedule and guidelines for permanently destroying biometric data.

53.     In passing BIPA, the Illinois General Assembly recognized:

Biometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions.

740 ILCS § 14/5(c).

54.     Nevertheless, Defendants collect users' facial geometry in connection with, for example, algorithms used to determine users' ages and the app's facial filter and tracking features.

### E. TikTok Uses Users' Personal Information and Biometrics—along with its Algorithms and AI--to Provide Targeted Content, Features, and Effects

55.     TikTok uses the private data it collects to drive app use, user engagement, and thus profits.

56.     TikTok's user homepage is titled "For You." The "For You" page is the first thing users see when opening that app, and it is an algorithmic feed that recommends targeted videos for each user, even if the user never posted anything, followed anyone, or liked a video.

57.     Once active on and engaging with the app, TikTok's AI algorithm continuously records each action users take on the app, including what videos each user watches, how long each user watches a particular category of video, and which advertisements a user engages with, as well their current location. As a result, "[t]he company has years of data informing it on how people think, feel and act, making it an expert on what makes people tick and how to persuade

them to watch, share or like certain content."[31]

58.    As one teenage user explained, the app's powerful AI is key to keeping users on the app for extended periods of time:[32]

> … TikTok still manages to rope us into its addictive videos. Because not only is its content addicting, the app itself is designed to keep us glued to our screens. With most other social media platforms, the majority of content is derived from accounts that you follow. And although you can follow and "friend" a lot of accounts on Instagram, Facebook, Twitter and Snapchat, there's eventually a point where all the "interesting" content runs dry. With TikTok, that isn't the case.
>
> Its "For You" feature supplies a steady, never-ending pool of TikToks specifically catered for you — from creators hailing from every cranny of TikTok. Not to mention, the app doesn't display the current time, making it easy to get swept up in the endless feed of videos.
>
> Even more, the viral nature of TikTok has produced an entirely new generation of youths viewing social media as a performative pursuit. Though social media inherently possesses and endorses posturing for others online, this app has taken it even further by promoting actual performance art — dancing, singing, acting, editing and more. It has broadened the definition of what social media is: TikTok isn't merely a social app to share posts and mindlessly scroll through. For almost every user, it's become an activity, a hobby, a project, a transactional video dialogue between user and camera.

59.    In addition to using its AI to bombard users with addicting streams of content, TikTok has developed advanced technological software that allows users to apply effects and animations (referred to as "face filters" and trackers) to their videos in real time. TikTok has multiple categories of "face filters," including "Trending" and "Animals," [33] as well as a face

---

[31] https://www.bloomberg.com/news/newsletters/2019-10-29/worries-that-tiktok-is-a-threat-to-national-security-have-merit

[32] https://cornellsun.com/2020/02/09/nguyen-the-terrifyingly-tantalizing-trend-thats-tiktok/

[33] E.g., https://medium.com/@banuba/how-camera-face-filters-brought-tiktok-millions-of-users-4081f885f81c

tracker effect that tracks and automatically zooms in on the user's face.

60.     The face filters use a smartphone's or tablet's camera to scan or map the user's face and other biologically unique features—i.e., users' biometric identities and biometric information.

61.     It was reported that TikTok has created a feature that allows users to superimpose an individual's facial features on top of their own and record a video (referred to as "deepfake" videos).[34] The technology that relies on facial recognition capabilities and biometric face scans "is often so good that it is hard to tell if the content was manipulated."

62.     There is also significant evidence that TikTok uses its facial recognition capabilities to identify and categorize its users' race, age, and gender. In February 2020, Marc Faddoul, an AI researcher at UC Berkeley School of Information, found that TikTok was recommending accounts on users' "For You" page that matched the race, age or facial characteristics of the user and the profiles he or she already followed.[35] Mr. Faddoul found that when he followed the TikTok account of a black woman, the app recommended that he follow three more black women. The facial recognition feature was so effective that when Mr. Faddoul followed an Asian man with dyed hair, the app recommended three more Asian men with dyed hair, and the same thing happened for men with visible disabilities.

---

[34] https://www.forbes.com/sites/petersuciu/2020/01/07/tiktoks-deepfakes-just-the-latest-security-issue-for-the-video-sharing-app/#30e557a370a2

[35] https://www.wired.co.uk/article/tiktok-filter-bubbles

63.     The following chart details some of Mr. Faddoul's findings:[36]



64.     Notably, while TikTok does not request personal information such as whether a man has a beard or dyes his hair, the app was able to identify individuals with those features.

65.     It has been reported that TikTok has also implemented voice recognition capabilities that can be used to identify speakers and manipulate their words.[37]

66.     On information and belief, TikTok's ability to recognize age, race, gender, voice, and facial features uses the AI technology developed and patented by TikTok's affiliate Beijing ByteDance Network Technology Co Ltd.

67.     ByteDance has acknowledged that it collects biometric data in its TikTok clone apps around the globe. Vigo Video, owned by TikTok Pte. Ltd, states in its Privacy Policy (Last Updated: January 1, 2020), that it "collect[s] and use[s]" a user's "face landmarks or face

---

[36] https://twitter.com/MarcFaddoul/status/1232014908536938498

[37] https://www.cigionline.org/articles/new-platform-old-problems-how-tiktok-recreates-regulatory-challenges-came-it; https://www.youtube.com/watch?v=2D29f4-J2mw

contour[.]"[38] Douyin's Privacy Policy (Last Updated: February 13, 2020) similarly states that it

uses "face recognition" to "perform real-name authentication."[39]

68.     TikTok, however, has never adequately disclosed its collection and use of

biometric information, including facial geometry, let alone disclosed its retention policy for such

data.

69.     These features have been credited with having a "huge impact on user

involvement and allowed TikTok to grow its audience organically."[40]

70.     TikTok's algorithm and features are so successful that the average person spends

45 minutes per day scrolling through the app.[41]

**F.  TikTok Attracts Children to Its Platform and Collects Their Private and
     Legally Protected Data, But Leaves Them Vulnerable and Exploited**

71.     Minor children make up a substantial portion of TikTok's user demographic, and

thus, Defendants' profits.

72.     In September 2016, the *New York Times* described Musical.ly as "an app that is

young in every sense of the word," noting that the company claimed to have over 100 million

users, mostly between ages 13 and 20; the *Times* observed: "What is striking about the app,

though, is how many of its users appear to be even younger than that."[42]

73.     In 2019, TikTok reported that approximately 60% of its active users in the United

---

[38] https://www.vigovideo.net/hotsoon/in_app/privacy_policy/

[39] https://www.douyin.com/agreements/?id=6773901168964798477 (translation provided by Google
Translate)

[40] https://medium.com/@banuba/how-camera-face-filters-brought-tiktok-millions-of-users-4081f885f81c

[41] https://www.wsj.com/articles/tiktoks-videos-are-goofy-its-strategy-to-dominate-social-media-is-
serious-11561780861

[42] https://www.nytimes.com/2016/09/17/business/media/a-social-network-frequented-by-children-tests-
the-limits-of-online-regulation.html

States were between the ages of 16 and 24,[43] and 28% of users were below the age of 18.[44]

74.     In February 2020, *The Wall Street Journal* reported that TikTok's "youthful vibe presents a predicament for TikTok because many devotees are under 13." In particular, the article reported that approximately 70% of 10-year-old girls with smartphones in the U.S. downloaded and used TikTok in 2019. Moreover, the average 10-year-old girl using TikTok spends more than four hours a week on the app, equivalent to more than 1,000 videos.[45]

75.     Indeed, TikTok has designed its "coin" packages to attract children to purchase them, with or without parental consent, by making them easy to purchase and including playful images such as pandas and rainbows.[46]

76.     TikTok also offers child-friendly features and effects, including song selections from Disney movies or regarding school-related subjects.

77.     Even to the extent TikTok purports to limit features or data collection for certain ages, there are no meaningful enforcement mechanisms. Any child under the age of 13 or 18 can simply provide a fake birthday when logging in and gain access to all of TikTok's features.[47]

78.     There are public accounts for children as young as four years old.[48] An investigation by the *South China Morning Post* identified that "at least 100 local primary school

---

[43] https://www.reuters.com/article/us-tiktok-cfius-exclusive/exclusive-u-s-opens-national-security-investigation-into-tiktok-sources-idUSKBN1XB4IL

[44] https://www.wsj.com/articles/tiktok-wants-to-grow-up-but-finds-it-tough-to-keep-kids-out-11581858006

[45] *Id.*

[46]   https://www.the-sun.com/lifestyle/tech/475150/how-tiktok-tempts-kids-to-spend-hundreds-of-pounds-on-virtual-coins-to-pay-online-celebs/

[47] *E.g.,* https://commercialfreechildhood.org/wp-content/uploads/2020/05/tik_tok_complaint.pdf (discussing tests of the registration process)

[48] https://commercialfreechildhood.org/wp-content/uploads/2020/05/tik_tok_complaint.pdf; https://www.bbc.com/news/blogs-trending-47813350?mod=article_inline

pupils – identified through videos showing them in uniform or their real names or phone numbers – are active on the app, having posted between 10 and 500 clips each. More than 40 [of those 100] users are between the ages of 10 and 12, according to their bios and confirmed by the *Post*."[49]

79.     Indeed, it has been reported that sexual predators have adopted TikTok as an ideal means to connect with children.[50] Over a three-month period, the BBC found hundreds of sexual comments posted on videos uploaded by teenagers and children. The BBC's reporting found that many of the sexually explicit comments came from the same accounts who repeatedly attempted to contact teenagers. In fact, the BBC uncovered a public message from an adult male offering to pay for a child's airline ticket to Turkey under one such video.

80.     As a result of the concern that TikTok exposes children to sexual predators, pornographic content and cyberbullying, a High Court of India and India's Ministry of Electronics and Information Technology ordered the app to be removed from Apple's and Google's app stores within the country.[51]

81.     On February 27, 2019, the Federal Trade Commission ( "FTC") announced that Musical.ly (now TikTok) violated the Children's Online Privacy Protection Act ("COPPA"), which requires that websites and online services directed to children obtain parental consent before collecting personal information from children under the age of 13.[52]

---

[49] https://www.scmp.com/news/hong-kong/education/article/2146840/hong-kong-children-expose-their-identities-thoughts-and

[50] https://www.bbc.com/news/blogs-trending-47813350?mod=article_inline

[51] https://techcrunch.com/2019/04/16/tiktok-india/. The order was reversed after TikTok appealed the decision, arguing that it had removed the inappropriate content. https://www.cnn.com/2019/05/02/tech/tiktok-ban-india-users/index.html

[52] COPPA regulates operators of websites and online services that: 1) are directed to children and collect personal information from them, or 2) are directed to a general audience, but have actual knowledge that

82. The FTC found that TikTok was "directed to children" based upon, *inter alia*, the app's "subject matter, visual content, music, and the presence of child celebrities or celebrities who appeal to kids."[53] For example, the FTC cited in-app song folders with titles like "Disney" (featuring music from movies like Toy Story and The Lion King) and "school" (featuring songs about school-related subjects or school-themed TV shows and movies).

83. The FTC further found that the company had "actual knowledge" that it was collecting personal information from children. Indeed, many users' profiles listed children's dates of birth or grade in school.

84. Further, since its inception in 2014, the FTC noted that Musical.ly received thousands of complaints from parents of kids under 13 who were registered users. In fact, within a two-week period in September 2016, Musical.ly received over 300 complaints from parents attempting to delete their child's account.

85. Ultimately, the FTC found that Musical.ly violated COPPA by: (a) failing to provide notice on their site of the information they collect online from children, how they use it, and their disclosure practices; (b) failing to provide direct notice to parents; (c) Failing to get consent from parents before collecting personal information from children; (d) failing to honor parents' requests to delete personal information collected from kids; and (e) retaining that personal information for longer than reasonably necessary.

86. TikTok agreed to pay a record $5.7 million civil penalty and to change its

---

they are collecting personal information from children. If the site or service meets either definition, COPPA requires them – among other things – to get parental consent before collecting personal information from children under 13. The FTC's complaint alleges Musical.ly was covered under both standards.

[53] https://www.ftc.gov/news-events/blogs/business-blog/2019/02/largest-ftc-coppa-settlement-requires-musically-change-its

practices to ensure COPPA compliance.

87.     FTC Chairman Joe Simons stated: "This record penalty should be a reminder to all online services and websites that target children: We take enforcement of COPPA very seriously, and we will not tolerate companies that flagrantly ignore the law."

88.     Nevertheless, on May 14, 2020, more than a year after TikTok's record-setting FTC COPPA settlement, a group of 20 advocacy groups filed a new FTC complaint[54] alleging that TikTok is still violating COPPA.[55] The complaint alleges, *inter alia*, that TikTok failed to comply with the consent decree in the prior COPPA matter and did not destroy all personal information collected from users under age 13, nor did it obtain parental consent for the minors' accounts. The complaint further alleges that TikTok collects information—without consent—that goes beyond what would be required to support internal operations, including videos, usage history, the content of messages sent on the platform, and geolocation, and shares this information with third parties.

## G. Defendants Have Faced Broad Scrutiny for Their Inadequate Data Protection Practices

89.     Compounding the harm caused by the mass collection of personal data and biometrics is Defendants' failure to protect the private user data they collect.

90.     On January 8, 2020, the Israeli cyber security company Check Point issued a

---

[54] https://commercialfreechildhood.org/wp-content/uploads/2020/05/tik_tok_complaint.pdf

[55] Those groups include: Campaign for a Commercial-Free Childhood, the Center for Digital Democracy, Badass Teachers Association, Berkeley Media Studies Group, Children and Screens: Institute of Digital Media and Child Development, Consumer Action, Consumer Federation of America, Consumer Reports, Defending the Early Years, Electronic Privacy Information Center, Media Education Foundation, Obligation, Inc., Parent Coalition for Student Privacy, Parents Across America, ParentsTogether Foundation, Privacy Rights Clearinghouse, Public Citizen, The Story of Stuff, United Church of Christ, and USPIRG.

report stating that it had discovered "multiple vulnerabilities within the TikTok application."[56]
These vulnerabilities could allow attackers to, *inter alia*, get a hold of TikTok accounts and
manipulate their content, make private "hidden" videos public, and reveal personal information
saved on the account such as private email addresses

91.     Matthias Eberl, who describes himself as a journalist and educator in the field of
data protection and multimedia journalism, performed what he called "a detailed privacy check
of the TikTok app and its corresponding website," finding multiple transparency and data
protection concerns.[57] In an article he published in or around December 2019, he noted his
findings, which included, among other concerns, TikTok's transmission of device information,
usage time, and a list of watched videos to third parties Appsflyer (a mobile marketing analytics
and attribution platform with thousands of partners) and Facebook; its transmission of user
search terms to Facebook; and its use of invasive digital fingerprinting technology.

92.     At the Social 2030 Conference in February 2020—a conference focused on
challenges and opportunities for social media—Reddit's Chief Executive Officer Steve Huffman
called TikTok "fundamentally parasitic" noting that "it's always listening, the fingerprinting
technology that they use is truly terrifying, and I could not bring myself to install an app like that
on my phone."[58]

93.     On October 23, 2019, Senators Tom Cotton (R-Arkansas) and Chuck Schumer
(D-New York) sent a letter to Acting Director of National Intelligence Joseph Maguire,
requesting that the Intelligence Community formally conduct an assessment of the national

---

[56] https://research.checkpoint.com/2020/tik-or-tok-is-tiktok-secure-enough/

[57] https://rufposten.de/blog/2019/12/05/privacy-analysis-of-tiktoks-app-and-website/

[58] https://techcrunch.com/2020/02/26/reddit-ceo-tiktok-is-fundamentally-parasitic/

security risks posed by TikTok.

94.     The Senators noted that ByteDance is required to adhere to the laws of China, whose cybersecurity laws compel Chinese companies to support and cooperate with intelligence work controlled by the Chinese Communist Party.

95.     In November 2019, it was reported that the Committee on Foreign Investment in the United States ("CFIUS") had initiated an inquiry into how TikTok maintains the personal data of its US users and whether it secretly sends user data to China.[59] In particular, the review focuses on ByteDance's acquisition of Musical.ly, and will consider whether to unwind the transaction or otherwise for ByteDance to divest TikTok.

96.     By January of 2020, each branch of the U.S. military had banned the use of TikTok on government-owned phones due to data-safety concerns.[60] These decisions followed the Defense Information Systems Agency within the U.S. Department of Defense recommended that all employees of the Defense Department not use TikTok on their devices. Lt. Col. Robin Ochoa, a spokeswoman for the Army, clearly stated that TikTok "is considered a cyber threat."

97.     On March 12, 2020, Senators Josh Hawley and Rick Scott introduced S.3455, titled the "No TikTok on Government Devices Act," which would ban all federal employees from using TikTok on any device issued by the United States or a government corporation.[61] Senator Scott noted that the bill was necessary to counteract the national security threat posed by TikTok's data.

---

[59] https://www.reuters.com/article/us-bytedance-tiktok-exclusive/exclusive-chinas-bytedance-moves-to-ringfence-its-tiktok-app-amid-us-probe-sources-idUSKBN1Y10OH;
https://www.nytimes.com/2019/11/01/technology/tiktok-national-security-review.html

[60] https://www.nbcnews.com/tech/tech-news/u-s-army-bans-tiktok-following-guidance-pentagon-n1109001

[61] https://www.hawley.senate.gov/senators-hawley-scott-introduce-legislation-ban-tiktok-government-devices

98.     Given TikTok's popularity (namely among children) around the globe, foreign authorities have announced their own examinations into TikTok's data privacy practices.

99.     In July 2019, the UK Information Commissioner at the Information Commissioner's Office ("ICO"), Elizabeth Denham, revealed to the UK parliament that her office had started an investigation into how TikTok maintains and uses the personal data of its children.[62] Ms. Denham noted that in addition to general private data collection concerns, she was investigating how TikTok's open messaging system allows any adult to message any child, as this feature may violate the General Data Protection Regulation ("GDPR") which requires TikTok to provide different services and different protections for children.

100.    On May 8, 2020, the Dutch Data Protection Authority announced that it has launched an investigation into TikTok over privacy concerns. The investigation's focus is whether TikTok adequately protects the privacy of children under Dutch law and the European Union's General Data Protection Regulation.[63]

101.    U.S. consumers have also taken notice of TikTok's improper collection and usurpation of their personal data. For example, in October 2018, an individual who tried TikTok noticed that TikTok had taken still photos from his "private" videos recorded on the app and used it for its own advertisements.[64] The individual only came to learn of TikTok's use of his private videos when he was notified by third parties that his face appeared in TikTok's advertisements posted on Facebook.

## V.     CLASS ACTION ALLEGATIONS

102.    Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiffs seek certification of the

---

[62] https://www.theguardian.com/technology/2019/jul/02/tiktok-under-investigation-over-child-data-use

[63] https://autoriteitpersoonsgegevens.nl/en/news/dutch-data-protection-authority-investigate-tiktok

[64] https://www.youtube.com/watch?v=SDdR8cue4eE

following class:

> All persons whose biometric information or biometric data was
> captured by the TikTok and/or Musical.ly apps while the person
> resided in Illinois (the Class).

103. Excluded from the Class are Defendants, their officers, directors, affiliates, legal representatives, employees, successors, subsidiaries, parent companies and assigns, and any judicial officers and associated court staff assigned to this case and their immediate family members.

104. *Numerosity*: *Federal Rule of Civil Procedure 23(a)(1).* The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. Based on information and belief, TikTok currently has tens of millions of users in the United States, over a quarter of which are minors below the age of 18, making joinder impracticable. Those individuals' names and contact information are available from Defendant's records, and Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods.

105. *Commonality and Predominance: Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3).* This action involves common questions of law and fact, which predominate over any questions affecting individual class members, including:

> a. Whether Defendants collected, used, and/or stored Class members'
> biometric information or biometric identity through the TikTok and/or
> Musical.ly apps;
>
> b. whether Defendants made the disclosures and obtained the written consent
> required by BIPA, before capturing any biometric data;
>
> c. whether Defendants shared any biometric information collected from Class
> members amongst themselves, or with third parties;

d. whether Defendants established and complied with the retention schedule and destruction guidelines required by BIPA;

e. whether Defendants' violations of BIPA were intentional, reckless, or negligent;

f. whether Plaintiffs and Class members are entitled to declaratory and/or injunctive relief to enjoin the unlawful conduct alleged herein;

g. whether Plaintiffs and Class members are entitled to statutory damages under BIPA; and

h. Whether Plaintiffs and Class members are entitled to actual damages under BIPA;

i. Whether Plaintiffs and Class members are entitled to attorneys' fees and costs under BIPA;

j. Whether Plaintiffs and Class members are entitled to injunctive or other relief under BIPA;

k. whether Plaintiffs and Class members have sustained other damages as a result of Defendants' conduct, and, if so, what is the appropriate measure of damages and/or restitution.

106. ***Typicality: Federal Rule of Civil Procedure 23(a)(3).*** Plaintiffs' claims are typical of other Class members' claims because Plaintiffs and Class members were subjected to the same allegedly unlawful conduct and damaged in the same way.

107. ***Adequacy of Representation: Federal Rule of Civil Procedure 23(a)(4).*** Plaintiffs are adequate class representatives because their interests do not conflict with the interests of Class members who he seeks to represent, Plaintiffs have retained counsel competent

and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. The Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

108. *Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2).* The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendant. Such individual actions would create a risk of adjudications that would be dispositive of the interests of other Class members and impair their interests. Defendants have acted and/or refused to act on grounds generally applicable to the Class, making final injunctive relief or corresponding declaratory relief appropriate.

109. *Superiority: Federal Rule of Civil Procedure 23(b)(3).* A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court, especially whether there are tens of millions of Americans affected.

## VI.    CAUSE OF ACTION

### COUNT I
### VIOLATION OF THE ILLINOIS BIOMETRIC INFORMATION PRIVACY ACT ("BIPA"), 740 ILCS 14/1, *ET. SEQ.* (ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS)

110.    Plaintiffs reallege and incorporate the foregoing allegations as if fully set forth herein.

111.    Defendants are corporations qualifying as "private entities" as defined by BIPA, 740 ILCS 14/10.

112.    Plaintiffs and class members are individuals whose biometric identifiers and/or biometric information was collected, stored, and used by Defendants in violation of BIPA.

113.    Defendants failed to make "available to the public" a written policy "establishing a retention schedule and guidelines for permanently destroying biometric identifiers or biometric information" as required by 740 ILCS 14/15(a) (a "retention policy").

114.    Defendants did not inform Plaintiffs or Class members "in writing that [their] biometric identifier[s] or biometric information [were] being collected or stored" as required under 740 ILCS 14/15(b)(1).

115.    Defendants did not inform Plaintiff or Class members "in writing of the specific purpose and length of term for which [their] biometric identifier[s] or biometric information [were] being collected, stored, and used," as required under 740 ILCS 14/15(b)(2).

116.    Defendants did not obtain Plaintiffs' or class members' "written release" as required by 740 ILCS 14/15(b)(3).

117.    Defendants acted intentionally or recklessly in collecting, storing, and using Plaintiffs' and Class members' biometric identifiers or biometric information, in not making a retention policy publicly available, and in failing to obtain a written release. In the alternative,

Defendants acted negligently by failing to ensure Plaintiffs or Class members were informed of and consented to Defendants' collection, storage, and use of their biometric information and identifiers, and failing to provide the required data retention information.

118.     These violations harmed Plaintiffs and Class members.

119.     Individually and on behalf of the members of the proposed Class, Plaintiffs seek: (1) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the members of the Class by requiring Defendants to comply with BIPA, including its requirements for collecting, capturing, receiving, otherwise obtaining, storing, and/or using biometric identifiers and biometric information, including BIPA's disclosure, retention, and consent requirements; (2) statutory damages of $5,000 for each intentional and reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, alternatively, statutory damages of $1,000 for each negligent violation pursuant to 740 ILCS 14/20(1); and (3) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## VII.     PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

a.     Certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that Plaintiffs are a proper class representatives; and appoint Plaintiffs' counsel as Class Counsel;

b.     Grant permanent injunctive relief to prohibit Defendants from continuing to engage in the unlawful acts, omissions, and practices described herein;

c.     Award Plaintiffs and Class members compensatory, consequential, general, and nominal damages in an amount to be determined at trial;

d.     Award statutory damages, trebled, and punitive or exemplary damages, to the extent permitted by law;

e.     Grant declaratory relief sought herein;

f.     Award to Plaintiffs the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

g.     Award pre- and post-judgment interest at the maximum legal rate; and

h.     Grant all such other relief as is just and proper.

## VIII.     DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all claims so triable.

Dated: June 26, 2020                     Respectfully submitted,

                                          /s/ Elizabeth A. Fegan

                                         Elizabeth A. Fegan
                                         **FEGAN SCOTT LLC**
                                         150 S. Wacker Dr., 24th Floor
                                         Chicago, IL 60606
                                         Phone: 312.741.1019
                                         Fax: 312.264.0100
                                         beth@feganscott.com

                                         Melissa Ryan Clark (*pro hac vice application forthcoming*)
                                         Jonathan D. Lindenfeld (*pro hac vice application forthcoming*)
                                         **FEGAN SCOTT LLC**
                                         140 Broadway, 46th Floor
                                         New York, NY 10005
                                         Phone: 332.216.2101
                                         Fax: 917.725.9346
                                         melissa@feganscott.com
                                         jonathan@feganscott.com

                                         *Counsel for Plaintiffs*